**MINNESOTA MINING AND MANUFACTURING COMPANY, Appellant,**

v.

**DUNLOP TIRE AND RUBBER CORPORATION, Appellee.**

Patent Appeal No. 6641.

United States Court of Customs
and Patent Appeals.

Feb. 21, 1961.

————◆————

Carpenter, Abbott, Coulter & Kinney, Mark W. Gehan, St. Paul, Minn. (Charles H. Lauder, St. Paul, Minn., of counsel), for appellant.

Benjamin T. Rauber, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

Appellant-opposer owns the trademark "Unipak"[1] for "plastic bags used for resinous material having principal usage in electrical insulating and connecting." It opposes registration by appellee-applicant of the trademark "Uni-Pac" for "storage battery assemblies."[2]

The Trademark Trial and Appeal Board dismissed the opposition (123 USPQ 233) and opposer appealed asserting the board was in error in 1)

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

1. Registration No. 621,044 issued Feb. 14, 1956 on application filed Apr. 7, 1954. First use stated "at least as early as Jan. 15, 1954."

2. Ser. No. 34,046 filed July 19, 1957. June 10, 1957 is given as the date of first use.

considering opposer's "Unipak" product as a plastic bag container for "Scotchcast" brand resin, and 2) holding that the goods of the parties have "nothing in common with respect to their essential characteristics or uses," and that "the average purchasers thereof are not the same." Both assertions of error are directed to the reasons given by the board for finding there was no likelihood of confusion, mistake or deception of purchasers as to the source or origin of the goods on which applicant uses its mark.

In here resolving the issue of such likelihood of confusion, mistake or deception, it is necessary, first, to determine the nature of opposer's mark, then to compare it with applicant's mark and finally to consider whether purchasers are likely to consider applicant's mark, as used on its goods as an indication of source or origin, is likely to cause confusion, mistake or deception.

Opposer's "Unipak" product is a two-compartment unit package formed of a plastic film and contains a resin in one compartment and a hardener for that resin in the other compartment. The resin and hardener are separated from each other by a rupturable inner wall which separates the compartments. When the product is to be used, the inner wall is broken and the resin and hardener are mixed together. After mixing, the bag is opened and the mixture is removed therefrom. The mixture cures within a few minutes into a solidified resin having electrical insulating properties. This two-part plastic film package is said to prevent errors in measurement of the resin and hardener at the time of mixture as well as preventing premature contact of these materials. It is designed to provide an easy way to mix and dispense the material and is particularly useful for providing electrical insulation or vapor barrier seals for electrical cables during field installation or repair.

Applicant uses its mark "Uni-Pac" for a unitary package containing a dry charged storage battery of the wet cell type and separate plastic bottles which contain the sulphuric acid so that the electrolyte can be added at the time of purchase to the previously dry charged cells of the battery.

It is opposer's position that the plastic bottles of electrolyte in applicant's packaged battery unit are similar to its two-compartment plastic bags in that both are plastic, both are used for packaging a premeasured amount of liquid and both are disposable after being emptied of their liquid contents.

At the outset we are required to examine the present record to determine what, if any, factors are here present which were not before us in Minnesota Mining & Manufacturing Company v. Sprague Electric Company, 1960, 279 F. 2d 281, 283, 47 CCPA 1067, and which involve the nature of opposer's mark. In the Sprague case we said:

"'Unipak' is used by appellant to identify and describe its container, not the source of its resins. Without exception, the many advertisements and other exhibits that appellant introduced in evidence show that 'Unipak' modifies the container in which the resins are packaged, and that the resins themselves are identified by the mark 'Scotchcast.'

\*　　\*　　\*　　\*　　\*

"It is apparent that appellant is endeavoring to condition the purchasing public to recognize 'Scotchcast' as the identifying mark of its resins and 'Unipak' as the type of container used for them. We are not convinced that MMM's registered 'Unipak' mark has been so used that it has acquired trademark significance with respect to the epoxy resins of its manufacture. And, although appellant sells various products to the electrical industry, we find nothing of record which satisfies us that those in that industry are, or will be led to associate appellant's 'Unipak' mark with any of its products other than

its plastic bags. As such, MMM's 'Unipak' mark must be considered solely in the light of that for which it was registered, i. e., 'Plastic bags used for resinous material having principal usage in electrical insulating and connecting.' "

Applicant here, as did appellee in the Sprague case, contends that opposer's mark is used for a plastic bag and that this fact is not changed by the recital in the registration of a usage for such a bag. Opposer took testimony by which it sought to establish that its trademark is not limited in the manner we found it to be in the Sprague case and to show that the mark is used by its customers to refer to the "fast cure" resin in the two-part plastic bag.

We do not think the testimony supports opposer's position. Its own witness, Bollmeier, testified:

"Q107. Does Minnesota Mining's trade-mark 'Unipak' have a similar use? That is, does it go to describe more than just the container? A. No, it does not. In no case do we use the trade-mark 'Unipak' to describe anything other than the two compartment package introduced in Exhibits 4, 5, and 6.

"Q108. Does the trade, as you are familiar with it apply the word 'Unipak' to other than the plastic bag of Minnesota Mining? A. No. Our action has been such as to prevent or oppose such usage, because the Unipak container of Scotchcast Resin No. 4 enjoys usage as an individual and separate item in addition to its inclusion in splicing kits which we manufacture and sell under another trade-mark.

"Q109. Have you ever heard any customers of Minnesota Mining refer to these splicing kits as Unipak splicing kits? A. No, I have not.

"Q110. It is possible that such usage has occurred and not come to your attention? A. It is possible.

"Q111. But as far as you know, the Minnesota Mining trade-mark 'Unipak' applies only to the plastic container? A. That is correct."

In the light of this testimony, we are unable to agree with the position in opposer's brief in discussing the differences between the present case and the Sprague case, that:

"The evidence in this case is also different with respect to the use of appellant's trade-mark in connection with its product. Here the record clearly shows that appellant's trade-mark 'Unipak' is associated with only one member of a 'family' of nineteen different 'Scotchcast' Brand resins, and that it is only this one particular unique resin product which is ordered and referred to by purchasers only by the term 'Unipak'. The record shows that appellant's purchasers do not use the trade-mark 'Unipak' to designate only the type of container in which resin No. 4 is sold. The purchasers and users of this unique product of appellant, a resin within a plastic container, know and specify that product as a 'Unipak', and this well-known trade-mark has become very valuable to appellant."

■ We find, therefore, that here, as in the Sprague case, opposer's mark "Unipak" is applied to the two-part plastic bags in which it sells one of its "Scotchcast" brand resins.

We pass now to a consideration of whether applicant's use of its mark "Uni-Pac" on its unitary package containing a storage battery and plastic bottles of electrolyte will be likely to cause confusion, mistake or deception of purchasers as to source or origin of the goods.

■■ We found in the Sprague case, that the mark "Unipak," "is so highly suggestive of unit packaging as to be almost descriptive and is therefore not a strong origin indicator." This is also true here. Opposer and applicant each use the marks in issue as secondary trademarks suggestive of the unit packaging of their goods on which their pri-

mary trademarks are used. Under such conditions of use purchasers will not attribute much significance to either opposer's or applicant's mark as indicating the source or origin of those goods. In any event, we do not think applicant's use of its mark on its storage battery assemblies would lead purchasers to think they had the same source as opposer's plastic bags.

We therefore affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.